IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 1:09-CR-170 |
| | : |
| MAURICE OUTEN, | : |
|       Defendant | : |

*M E M O R A N D U M*

I.  *Introduction*

      Defendant, Maurice Outen, has filed a counseled motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. Defendant was charged in a one-count indictment with possession with intent to distribute fifty grams and more of cocaine base and cocaine. In January 2010, a jury found him guilty. He was sentenced to 136 months of imprisonment. His conviction and sentence were affirmed on direct appeal. *United States v. Outen*, 412 F. App'x 492 (3d Cir. 2011) (nonprecedential). The police had been alerted to Outen's drug-trafficking activities by Emrica Smalls, his former girlfriend, when she went to the hotel he had been staying at in the Harrisburg, Pennsylvania, area.

      Defendant's position is that Smalls was an emotionally unstable woman who was vindictive about the end of their relationship. So she purchased almost a half a kilogram of powder cocaine and drug-trafficking paraphernalia (like a digital scale and electric mixers) and planted this evidence in certain areas of the hotel where it would inculpate him. The claims raised in his 2255 motion mainly focus on his trial counsel's

alleged ineffectiveness in marshaling the evidence and making the arguments that would have convinced the jury that she had set him up.

On April 18, 2012, we held a hearing on the motion. The parties filed post-hearing briefs, and we deal with the issues raised as follows.

II. *Discussion*

A. *Failure to Investigate Witness Linda Wright Robinson*

Defendant claims trial counsel was ineffective in not investigating the testimony that Linda Wright Robinson could have provided. He asserts her testimony would have buttressed the defense that Smalls had set Defendant up.[1] Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel. First, counsel's performance must be deficient. *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005) (citing *Strickland*). Second, counsel's deficient performance must have prejudiced the defense. *Id.* (quoting *Strickland*). A defendant must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 105 (quoting *Strickland*).

---

[1] The 2255 motion mentions two other witnesses, but Defendant has withdrawn any argument based on counsel's failure to investigate the other witnesses' testimony.

-2-

We provide some background on this claim. Robinson had become friends with Smalls when they were both serving time at the Montgomery County Correctional Facility. (Doc. 89, 2255 hearing transcript, p. 7). In a letter, Defendant notified counsel on August 7, 2009, before trial, that Robinson, identifying her as Linda Wright, could provide testimony favorable to the defense. (*Id.*, p. 44).[2] Defendant wrote that Robinson could testify that Smalls had previously tried to do the "same thing" to him with the police [meaning set him up], but it had not worked before, "so this time she made sure it stuck." (2255 hearing, Govt. Ex. 7, p. 3). Defendant also told counsel the witness was at the Montgomery County prison.

In an affidavit, dated July 19, 2011, and attached to Defendant's memorandum in support of his 2255 motion, Robinson describes the previous incident. On September 12, 2008, Outen, Smalls, and Robinson were driving in a car together. Smalls quarreled with Outen, and Smalls got out of the car. She flagged down a police officer and told him Outen had drugs on him. The officer handcuffed Defendant and searched him for drugs. Finding none, the officer released him. (Doc. 79, Def.'s 2255 Mem, ECF p. 39).

The affidavit adds new information. Sometime in March or April of 2009, Smalls visited Robinson and said, "I know he is with another woman, and I am going to set his black ass up." Then a week after Defendant was arrested on the charge in the

---

[2] Wright was married on September 19, 2008, and Robinson is her married name. (Doc. 89, 2255 Hearing Transcript, pp. 12, 15).

-3-

instant case, Smalls told Robinson, "I got him. I set his black ass up." (*Id.*). Robinson's testimony at the 2255 hearing materially affirmed these representations. (Doc. 89, pp. 8-10). Robinson knew that Defendant had been arrested but made no attempt to notify law enforcement or anyone associated with Defendant because no one told her she had to and the only thing she knew was that Defendant was in Harrisburg. (*Id.* pp. 17-18). Two weeks before executing her affidavit (about July 5, 2011), Defendant contacted her by phone about his case and she told him what she knew. (Doc. 79, ECF p. 40).

At the 2255 hearing, trial counsel testified that he did try to locate Robinson at the county prison but could not locate her there. (Doc. 89, pp. 26, 44). He has no independent recollection of whether he tried to locate her by other well-known means, such as by way of the Pennsylvania Department of Corrections' website and its inmate locator system, but he is sure that he did. (Doc. 89, p. 48).[3] Since he had no other address for her, he made no further attempt to contact her.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471

---

[3] Robinson testified she was incarcerated for a period of about seventeen months, until October 13, 2010, eight months in Montgomery County prison and then eight months in the State Correctional Institution at Muncie. (*Id.*, pp. 13-14). She said she was incarcerated in the county prison under the name Linda Wright. (*Id.*, p. 15).

(2003) (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066). Counsel's performance cannot be assessed based on hindsight. *Strickland*, *supra*, 466 U.S. at 690, 104 S.Ct. at 2066.

We do not believe that counsel's performance was deficient, as required by the first *Strickland* prong. Before trial, counsel would have known, at most, that Robinson would have testified to an incident where Smalls falsely accused Defendant of having drugs on his person. This information would have no relevance to a defense that Smalls had actually gathered and planted the evidence used against him. Counsel could therefore have made the decision not to investigate Robinson's testimony. In addition, counsel could not locate Robinson at the one address Defendant supplied him, the Montgomery County prison. Defendant provided the name Linda Wright and Robinson testified she was at the prison under that name, but we note that Defendant supplied us with no prison records indicating she was in fact there under the name Linda Wright.

The other piece of information Robinson had was far more relevant, that Smalls stated she had set Defendant up. However, counsel had no way of knowing about this evidence before trial, and Defendant does not attempt to show that he reasonably could have discovered it.[4] This information thus cannot be the basis of an ineffectiveness claim.

---

[4] This evidence might be the basis of a motion for a new trial under Fed. R. Crim. P. 33(b)(1), but we are dealing here with a 2255 motion.

-5-

We therefore conclude that the claim based on the failure to investigate Linda Wright Robinson's testimony has no merit.

### B. *Counsel's Failure to Develop Evidence As to Emrica Smalls's Emotional State*

Defendant claims trial counsel was ineffective in failing to investigate evidence that Smalls: (1) was emotionally unstable; (2) had attempted suicide shortly before Defendant's arrest; and (3) had been released from a mental hospital just three weeks before Defendant's arrest. Defendant argues that this evidence would have supported his defense that Smalls's mental state was such that she was willing to frame him.

We see no prejudice to Defendant from counsel's failure to obtain evidence of her emotional instability and hospital records documenting her emotional state or an attempted suicide.[5] We agree with the government's argument that any evidence of this type would have actually worked against the theory that Smalls had set Defendant up because it would have indicated she was unable to accomplish such a plan. The government could have argued that attempted suicide meant that Smalls was a person who acted against herself, not a person who acted against others.

We note here that evidence presented at trial supported the inference that Smalls was capable of framing Defendant. The night auditor testified that Smalls kept

---

[5] We note that Defendant presented no such evidence at the 2255 hearing.

-6-

repeatedly calling for Defendant, (Doc. 70, trial transcript, pp. 151-520), and on two occasions came to the hotel to see him.  (*Id.*, p 154).  Smalls herself testified when called by the defense that she did not like Defendant because he had cheated on her.  (*Id.*, p. 165).  She went so far as to go to his father's house in about April 2009, presented an excuse to search Defendant's room at the house, and discovered where he was in Harrisburg by finding a receipt for his hotel.  (*Id.*, pp. 173-74, 181-82, 192-93, 197-98). On May 14, 2009, she drove to Harrisburg from Philadelphia and admitted she started banging on his hotel room door because she believed he had a woman inside.  (*Id.*, p. 175).  According to her, he tried to shove her away from the door, but she managed to get his car key because, as she testified, he had it in his hand when he came to the door. She intended to take the car (a rental) and leave him stranded because "he [was] a dog." (*Id.*, p. 176).  This evidence was sufficient to support the argument that Smalls was motivated to set Defendant up.  Evidence showing that Smalls was suicidal would have worked against this evidence.

        C.  *Counsel's Failure to Develop Evidence As To Defendant's Legitimate Business*

Defendant claims trial counsel was ineffective in not procuring the evidence that he had a legitimate business selling clothing out of the back of his car, which would have shown that he was not a drug dealer.  Specifically, Defendant contends he gave counsel a copy of his bank statement, which would have shown the costs incurred in the

business. Defendant also asserts counsel failed to obtain the lease agreement for the car he used in his business.[6]

We reject this claim because Defendant has failed to produce the bank statement or the car lease. Defendant has the burden of proof in these 2255 proceedings, *see Langston v. United States*, 105 F. Supp. 2d 419, 422 (E.D. Pa. 2000), so if he cannot produce these records, we cannot determine if his trial counsel was ineffective in this regard.

### D. *Counsel's Failure to Ask Smalls Certain Questions That Would Have Made Clear to the Jury That Smalls Had the Opportunity to Plant the Drugs*

Defendant claims trial counsel was ineffective in not asking certain questions that would have made clear to the jury that Smalls had ample opportunity to plant the drugs.

We provide some background. The case against Defendant arose from events occurring a little after 11:00 p.m. on May 14, 2009. A Swatara Township police officer just happened to be at Defendant's hotel to show the night clerk a flyer on a unrelated incident. Smalls approached him, at first supposedly wanting his assistance in retrieving her clothes from Defendant's room. (Doc. 70, trial transcript, pp. 22-26). She

---

[6] Defendant testified that the rental car that was searched as part of his arrest was not the rental car used in his business. The latter was in the shop being repaired and that car had his inventory. (Doc. 89, 2255 Hearing Transcript, p. 51).

then began telling the officer and other officers that Defendant was a drug dealer.  Then, as recounted by the Third Circuit on direct appeal:

> Outen refused the officers' request to accompany Smalls to retrieve her things and suggested that a hotel employee would go to the room instead.  While Outen and the employee were in his room, one of the officers saw two handheld mixers, plastic baggies, acetone, and a box for a digital scale inside a trashcan outside Outen's room.  Smalls remained in the parking lot and informed the officers that Outen was using his rental car to transport drugs.  When they approached the car, officers observed a clear plastic bag containing a white powder sticking out from underneath a floor mat.  Outen came back out to the parking lot, and the officers arrested him.  Smalls also told the officers that Outen was hiding cocaine in the ceiling of the hotel's gym.  As Smalls predicted, officers found underneath the ceiling tiles a bag containing a scale, powder cocaine, crack cocaine, and a receipt for Outen's hotel room. After obtaining a search warrant for Outen's hotel room and rental car, officers discovered cocaine and various drug paraphernalia.

*Outen*, *supra*, 412 F. App'x at 493.  The amount of powder cocaine was 463.1 grams. (Doc. 70, pp. 115-16).  It had a purchase price of $16,000 to $18,500.  (*Id.*, 75).  The amount of crack cocaine was 84.3 grams.  (*Id.*, p. 116).  Defendant's hotel receipt was found wrapped around the crack cocaine.  (*Id.*, p. 72).

Smalls also told Officer Richard LeCadre that Defendant had marijuana, about $18,000 in cash, a large amount of cocaine and a handgun in his room.  (Doc. 70, pp. 139-40).  None of the latter representations were true.  However, the day after, and after Defendant's arrest, a hotel maid found a bag with a large sum of cash in the room at the foot of the bed.  (Doc. 65, suppression-hearing transcript, p. 47).

Smalls had been to the hotel before May 14. The hotel's night auditor testified she was there the night before, May 13, and he gave her a key to Defendant's room after Defendant consented. (*Id.*, p. 154).[7] When she came to the hotel the night of May 14, she again asked for a key to his room, but he refused, explaining that he had only given her one the night before because Defendant had agreed that she could have one. (*Id.*). At the 2255 hearing, the night auditor said the key he gave her would have "allowed her access the whole day of May 14th." (Doc. 89, pp. 5-6). When the night auditor was unsuccessful in phoning Defendant to give permission for another key, Smalls made contact with the police. (Doc. 70, p. 154).

Defendant contends trial counsel was ineffective in failing to ask Smalls questions concerning the following, all of which would have established a clear time line for her access to his room at the relevant times and opportunity to plant the evidence in his room and rental car:

> 1. About her taking the car keys from Defendant's dresser and why she told the police initially that she did not have the car keys when she was the one who gave the car keys to the police.[8]
>
> 2. About the amount of time she had the room key, specifically, trial counsel should have established more clearly that Smalls got the key at a very early point in the night auditor's May 14 shift that began on May 13 at 11 p.m.
>
> 3. When she arrived at the hotel

---

[7] The night auditor's shift is from 11:00 p.m. to 7:00 a.m. (*Id.*, p. 158).

[8] At the 2255 hearing, Defendant testified that he told trial counsel that Smalls had taken the car keys from his dresser before she left his hotel room. (Doc. 89, pp. 55-56).

      4. Her reason for obtaining Defendant's room key in the first place.

      5. What she did after she obtained the room key.

      6. About her exact arrival date at the hotel when she said on direct examination "whatever date you said" (Doc. 70, p. 173) in response to a question about whether she arrived at the hotel on May 13 or may 14.

We agree with the government that the failure to ask these questions does not establish ineffectiveness. The information for the time line of Smalls's access to Defendant's room and car was established by other evidence. The night auditor said he gave her a room key very early on his May 14 shift (maybe even after 11:00 p.m. on May 13). It was also established that Smalls had Defendant's car keys at the relevant time. (Doc. 70, p. 27). In his closing, trial counsel argued her presence at the hotel and her possession of the keys in arguing that she could have set Defendant up. (Doc. 70, pp. 23 and 26). Additional questioning of the sort proposed by Defendant was not necessary.[9]

---

      [9] Defendant also argues that there was evidence that Smalls's key allowed her entry to the room the day after Defendant was arrested, which would explain how the cash was found in his room the next day. There is no evidence that the one key the night auditor gave Smalls would have allowed access the next day. The night auditor stated it would only have been good through May 14. We reject Defendant's testimony at the 2255 hearing that he had been given two room keys and that Smalls had stolen one of the keys while she was in his room. (Doc. 89, p. 57). This testimony conflicts with that of the night auditor, who spoke of keying only one key as a room key. (Doc. 89, p. 4). It also conflicts with the night auditor's testimony that Smalls attempted to obtain another key from him on the night of May 14, which indicates Smalls did not have a key that allowed her entry into the room. Additionally, it makes no sense for Smalls to put cash in the room, after allegedly successfully having Defendant arrested.

> E. *Counsel's Failure to Ask Officer Richard LeCadre or Another Officer Certain Questions*

Defendant claims trial counsel was ineffective in not asking Officer LeCadre, or another officer at the scene on May 14, about the following matters.  First, LeCadre should have been questioned about Smalls's assertion that she gave the police the hotel receipt she had taken from Defendant's room at his father's house.  (Doc. 70, pp. 193-94).  Defendant maintains that since the only receipt entered into evidence was the receipt wrapped around the crack cocaine, this would have let the jury know that Smalls did not actually give them the receipt.  The difficulty with this position is that the receipt wrapped around the crack cocaine was not the only hotel receipt entered into evidence.  When the officers searched Defendant's room, they found a number of receipts for the room.  (Doc. 70, pp. 80-81).  Thus, it is not significant that Smalls may or may not have given the receipt to the officers.

Second, Defendant contends that Officer LeCadre should have been asked about Defendant's statement to him that Smalls was stalking him.[10]  Aside from any issue of admissibility of this testimony, we agree with the government that there was sufficient evidence presented at trial about Smalls's obsession with Defendant that failing to ask about stalking did not harm the defense.

---

[10] At the 2255 hearing, Defendant testified that he had told counsel about being stalked.  (Doc. 89, p. 52).

    F. *Failure to Argue to the Jury that Smalls Planted the Evidence, Rather Than Just Hinting at It*

Defendant claims that trial counsel was ineffective in only implying to the jury that Smalls had planted the evidence rather than flatly arguing that she had. He contends that in merely arguing that the jury had to "reconcile" evidence indicating he was set up with evidence incriminating him, counsel failed to focus the jury on the only viable defense and left them unclear as to what the defense was. Defendant adds that he could not have been harmed in any way by a direct argument to the jury that Smalls had framed him.

    Trial counsel testified at the 2255 hearing that his strategy was to argue that the government had not met its burden of proof beyond a reasonable doubt; and as part of that strategy, to point out evidence supporting the inference that Smalls had framed Defendant. He said that he did not argue a set-up directly because then he would have been taking on the burden of proving it. Hence he chose to strongly imply that Smalls did set Defendant up and cited evidence to support that theory as part of a reasonable-doubt defense. (Doc. 89, 2255 hearing, pp. 24, 45-46). As he saw it, he did not want to force the jury to decide if Defendant had been set up, just have them consider it as part of the government's burden of proof. (*Id.*, p. 46).

    We reject this claim of ineffectiveness. Counsel's strategy was a reasonable one. Actually accusing Smalls of planting the evidence would have focused the jury on how thin this defense was. To succeed on this defense, counsel would have had to create a reasonable inference that Smalls had access to a large quantity of

-13-

cocaine and the financial resources to purchase it. As to her access to almost half a kilogram of cocaine, the only evidence was provided by Outen at the 2255 hearing when he testified that "she always knew people in the streets." (*Id.*, p. 54). As to Smalls's financial resources, the evidence at trial showed that she had not worked since 2005. (Doc. 70, p. 192). This was confirmed at the 2255 hearing, when Outen testified that Smalls "did not work that often" and sold mink coats out of a barber shop. (Doc. 89, p. 53). He did say she could have gotten the money to purchase the drugs by credit-card fraud since she used such fraud to obtain TV sets worth $4,000 to $5,000 apiece and then fenced them. (*Id.*, pp. 53-54).

Contrary to Defendant's position, this evidence is insufficient to support a plausible argument that Smalls knew where to get such a large quantity of cocaine and had the financial ability to spend the $16,000 to $18,500 needed to purchase that quantity. A vague reference to people Smalls knew on the streets is not enough to establish access. Credit-card fraud would also have to have been extensive enough not only to produce enough cash to purchase the drugs but also to cover Smalls's living expenses. Additionally, the jury would also have had to believe that Smalls was willing to expose herself: (1) to criminal liability for the credit-card fraud necessary to raise the funds to purchase the drugs; and (2) to the same criminal liability incurred by Defendant if such a large quantity of drugs were found in her possession.

> G. *Trial Counsel Was Ineffective in Eliminating a Confrontation Clause Claim by Eliciting Hearsay From the Officers During the Government's Case and Then Calling Smalls During the Defense Case*

Defendant claims that trial counsel was ineffective in eliminating a Confrontation Clause claim by eliciting hearsay on cross-examination of the officers concerning what Smalls told them and then having Smalls testify during the defense case.

We reject this claim because we accept trial counsel's testimony that Defendant wanted to call Smalls as a witness, even though trial counsel also agreed that she should testify. (Doc. 89, 2255 hearing, pp. 29-30, 36, 40). Trial counsel believed there was very little that could be argued in defense of the case if she was not put on the stand, (*id.*, p. 30), and Defendant believed that if she took the stand, she would admit she had framed him. (*Id.*, p. 41).

In any event, the Confrontation Clause argument has no merit. Defendant argues there was a Confrontation Clause violation when the government rested its case without calling Smalls because the officers' knowledge of the drugs was derived from statements Smalls made to them, yet Smalls did not testify for the government.

This does not present a Confrontation Clause claim. The Sixth Amendment guarantees the right of a criminal defendant to confront the witnesses against him. U.S. Const. amend. VI. As Defendant himself acknowledges, the police officers who testified to finding the drugs and other evidence testified from their own observations. These were the witnesses the government presented against him, and he

was able to confront them at trial. There is no Confrontation Clause violation simply because the source of that knowledge can be traced to a person who was not called as a witness. The Confrontation Clause would prohibit the government's introduction of Smalls's out-of-court statements that were testimonial. *United States v. Berrios*, 676 F.3d 118, 126 (3d Cir. 2012). But the government did not introduce any such statements.

Further, we agree with trial counsel that calling Smalls as a witness was a reasonable trial strategy as Defendant had to place her before the jury to support his defense that she was vindictive enough to frame him.

> H. *Trial Counsel Was Ineffective in Not Moving For a New Trial on the Basis that the Verdict Was Against the Weight of the Evidence*

Defendant claims that trial counsel was ineffective in not moving for a new trial on the basis that the verdict was against the weight of the evidence. Defendant reasons that the government did not believe Smalls; otherwise, she would have been called as a witness in its case. Defendant points out that his trial counsel did not believe her either because he accused her of framing Defendant. Yet the police officers' discovery of the drugs and other evidence is directly traceable only to Smalls, the person no one believes. In these circumstances, trial counsel should have filed a motion for a new trial under Fed. R. Crim. P. 33(a).

We reject this claim. Rule 33(a):

> provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). . . . Such motions are not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

*United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008).

We see no ineffectiveness of trial counsel in not moving for a new trial on the basis that the verdict was against the weight of the evidence. The government may not have called Smalls as a witness, not because it did not believe her, but simply because her testimony was not necessary. On this basis alone, the claim can be rejected. Further, in light of the Rule 33(a) standard, based on the police officers' testimony, and the weakness in the argument that Smalls framed him, we do not believe that an innocent person was convicted.

III. *Conclusion*

Having considered all of the claims, we will issue an order denying the 2255 motion. The order will also deny a certificate of appealability, based on the analysis

-17-

in this memorandum. However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22.

        /s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: July 16, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :
                                 :
     v.                          :   CRIMINAL NO. 1:09-CR-170
                                 :
MAURICE OUTEN,                   :
     Defendant                   :

*O R D E R*

AND NOW, this 16th day of July, 2012, it is ORDERED that:

1. The motion (Doc. 78) under 28 U.S.C. § 2255 to vacate Defendant's conviction and sentence is denied.

2. A certificate of appealability is denied.

                                                      /s/ William W. Caldwell
                                                      William W. Caldwell
                                                      United States District Judge